**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISIION**

CARL CLARKE,

      Plaintiff,

v.                                                             Case No. 24-CV-81440-DAMIAN

EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS UNION LLC
and CITIBANK, N.A.,

      Defendants.

_____/

**CITIBANK, N.A.'S MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant, CITIBANK N.A. ("Citibank"), by and through its undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, respectfully moves this Court for the entry of an order compelling arbitration of all claims asserted in this matter and to stay these proceedings pending the completion of arbitration, and in support thereof states as follows:

**INTRODUCTION**

On November 18, 2024, Plaintiff CARL CLARKE ("Plaintiff"), filed a Complaint against Citibank and others alleging violations of the Fair Credit Reporting Act ("FCRA") in connection with his Home Depot credit card accounts. *See Complaint*, ¶¶ 12-14. Specifically, Plaintiff alleges that he attempted to make a

1

purchase with his existing Home Depot credit card account, when a new Home Depot credit card was opened in his name (collectively, the "Accounts"). *Id.*

As directly evidenced in the Complaint, Plaintiff's claims stem from the Accounts, which are both governed by identical written card agreements (the "Card Agreement"). *See Declaration of Andrew Grayot, Exhibit A*[1] *(hereafter "Grayot Decl.").* The Card Agreement contains a valid and enforceable arbitration provision by which Plaintiff expressly agreed to arbitrate "any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship" (the "Arbitration Agreement"). *See Grayot Decl., Exh. 1 and 2, pp. 7-8.* As evidenced by the Declaration of Andrew Grayot, Plaintiff opened each of the Accounts, received copies of the Arbitration Agreements, did not opt out of the Arbitration Agreements, and subsequently made charges on the Accounts. Thus, the Arbitration Agreement, as more fully defined below, is valid and enforceable under applicable law, and clearly encompasses Plaintiff's alleged claims against Citibank. *See id.*

Accordingly, the Court should grant Citibank's Motion and compel arbitration of all claims in this action because: (1) the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") applies; (2) the Arbitration Agreement is valid and enforceable; (3) the alleged claims fall squarely within the scope of the Arbitration Agreement, and (4) Citibank has not waived its right to compel arbitration as this

---

[1] The Declaration of Andrew Grayot and the exhibits referenced therein are collectively attached hereto as **Exhibit "A."**

Motion has been filed at the beginning of this case, prior to engaging in any discovery or motion practice, and it expressly reserved its right to compel arbitration in its Answer and Affirmative Defenses to Plaintiff's Complaint. For these reasons, and as discussed below, the Court should enforce the Parties' contractual agreement to arbitrate all claims, and should stay these proceedings, including all discovery, pending completion of the arbitration.

## BACKGROUND

On or about August 12, 2022, Citibank issued a Home Depot branded credit card ending 7647 (the "7647 Account") to Plaintiff. *See Grayot Decl,* ¶ 4. On or about August 14, 2023, Citibank issued a second Home Depot branded credit card account, this one ending 1307 (the "1307 Account"), to Plaintiff. *Id.* In conjunction with opening both Accounts, Plaintiff agreed to the terms set forth in card agreements that were provided to Plaintiff when he applied for and opened the accounts. *Id.* at ¶¶ 5-9, Exh. 1 and 2. Plaintiff used both credit cards and received all benefits from the Accounts. *Id.* at ¶¶ 10-11 and Exh. 3 and 4. Notably, Exhibit 4 to the Grayot Declaration identifies a charge of $64.02 on August 14, 2023 at a Home Depot store in Boca Raton, which is the same charge that Plaintiff affirmatively alleges making in his Complaint. *See Complaint*, at ¶ 13.

Among other terms, the Card Agreement contains a choice of law provision for South Dakota law and the express Arbitration Agreement. The relevant excerpts of the Arbitration Agreement are attached as **Exhibit "B."**

As discussed and instructed in the Card Agreements, Plaintiff had the right

3

to reject the Arbitration Agreement contained in the Card Agreements. *See Grayot Decl., ¶ 8, Exh. 1 and 2*. Citibank's records confirm that Plaintiff did not choose to reject the Arbitration Agreement in connection with either of the Accounts. *See Grayot Decl., ¶ 9*. Moreover, Plaintiff used the Accounts thereby confirming his assent to the terms in the Card Agreement and Arbitration Agreement. *See id. at ¶¶ 10-11, Exh. 3 and 4*. Thus, Plaintiff accepted the Arbitration Agreement associated with the Accounts and his relationship with Citibank and is bound by the terms of the Arbitration Agreement.

## LEGAL ARGUMENT

### I. Standard of Review

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]"). The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 (1967). As the Supreme

Court confirmed, this provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

There is no question that the FAA applies to this dispute as the Arbitration Agreement expressly provides that it must be enforced pursuant to the FAA. *See Grayot Decl., Exh. 1.* Further, the United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). The Account was opened, and used, by Plaintiff, who resides in New York. *See Complaint, ¶ 4.* Meanwhile, the Accounts were issued by Citibank, a national banking association located in South Dakota. *See Grayot Decl., ¶ 1.* Accordingly, the FAA applies.

Under the FAA, the required elements to compel arbitration are: (i) whether a valid written agreement to arbitrate exists; (ii) whether an arbitrable issue exists; and (iii) whether the right to arbitration was waived. *See Senti v. Sanger Works Factory, Inc.,* 2007 WL 1174076 at *2 (M.D. Fla. 2007); *Williams v. Eddie Acardi Motor Co.,* 2008 WL 686222 at *4 (M.D. Fla. 2008); *Fla. Farm Bureau Ins. Cos. V. Pulte Home Corp.,* 2005 WL 1345779 at *3 (M.D. Fla. 2005) (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). The trial court's role in deciding

5

whether to compel arbitration is limited to considering these elements and the inquiry must be made against the background of the "liberal federal policy favoring arbitration agreements" and "*it is the role of courts to 'rigorously enforce agreements to arbitrate.'*" *Klay v. All Defendants,* 389 F. 3d 1191, 1200 (11th Cir. 2004) (emphasis added), *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985); *Nestler-Poletto Realty, Inc. v. Kassin, 730 So.2d 324, 325* (Fla. 4th DCA 1999). Indeed, the Supreme Court has consistently held that the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 132 S. Ct. 12, 25-26 (2011)  (citations omitted); *see also Concepcion*, 563 U.S. at 344  (confirming that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'").

**II.     The Arbitration Agreement is Valid and Enforceable.**

An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable. *See Palidino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (The FAA "creates a presumption in favor of arbitrability"). Furthermore, it is well settled that the party resisting arbitration bears the burden of showing that the Arbitration

6

Agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

To determine whether the parties have agreed to arbitrate, courts apply generally accepted state-law principles governing the formation of contracts. *Williams v. Eddie Acardi Motor Co.,* Case No. 3:07-cv-782-J-32JRK, 2008 U.S. Dist. LEXIS 117503, at * 13 (M.D. Fla. Jan. 28, 2008). In other words, while the FAA exclusively governs the Arbitration Agreement's enforceability according to its terms, South Dakota law, pursuant to the choice-of-law provision, governs the determination of whether a valid agreement to arbitrate exists. *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1193-94 (S.D. Cal. 2013) (holding that South Dakota law applied under Citibank's choice-of-law provision and applicable choice-of-law test); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1176-77 (N.D. Cal. 2012) (same); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Plaintiff received notice of the Arbitration Agreement contained within the Card Agreement in 2022 when the 7647 Account, and again in 2023 when the 1307 Account was opened, and in both instances took no action to reject the Arbitration

Agreement, and proceeded to use the Accounts.² *See Grayot Decl.* Under South Dakota law, this is sufficient to establish Plaintiff's assent to the Card Agreement – including the Arbitration Agreement contained therein. *See* S.D. Codified Laws § 54-11-9 ("use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); *Ventura v. 1st Fin'l Bank*, No. C 03-4515 JF, 2005 WL 2406029, at *5 (N.D. Cal. Sept. 29, 2005) (noting that S.D. Codified Laws § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card"); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03 Civ. 8823(CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (under South Dakota law, plaintiff was bound by using cards after receiving card agreements). Moreover, South Dakota law, like federal law, strongly favors arbitration, and resolves any doubts in favor of arbitration. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814, 2002 SD 82 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration . . . There is an overriding policy favoring arbitration when a contract provides for it."). Thus, Plaintiff accepted the Arbitration Agreement and is bound by the terms thereof.

---

² Although Plaintiff's Complaint alleges that he did not receive the Card Agreement for the 1307 Account, this is inconsistent with Citibank's records, as set forth in the *Grayot Decl.*, and, in any event, Plaintiff does not dispute having an existing Home Depot credit card account. The Arbitration Agreement contained in the Card Agreements for either of the Accounts requires arbitration of Plaintiff's claims against Citibank.

### III. The Claims Fall Squarely Within the Scope of the Broad Arbitration Agreement.

Plaintiff's claims fall squarely within the broad Arbitration Agreement. In determining whether a particular claim falls within the scope of an arbitration agreement, the Court's focus is on the factual underpinnings of the claim rather than the legal theories alleged in the complaint. *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987); *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp.2d 1236, 1256 (S.D. Cal. 2000). As the Seventh Circuit explained: "[t]he touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern.*, 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted). Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).; *accord Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

The Supreme Court has held that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause

9

is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). This presumption "is particularly strong" where, as here, "the arbitration clause in question is broad." *Commc'ns Workers of Am.*, 475 U.S. at 650; *see also Prima Paint*, 388 U.S. at 398 (arbitration provision requiring arbitration of claims "arising out of or relating to" an agreement constitutes a "broad arbitration clause."); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (holding that an arbitration clause that provided arbitration for any dispute that "ar[ose] out of or related to" the agreement was a broad clause, "capable of expansive reach"); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 176 (3d Cir. 2010) (enforcing a "sweeping" arbitration clause in credit card agreement that applied to "any claim, dispute or controversy by either you or us against the other … arising from or relating in any way to the Cardmember Agreement"); *Davisson*, 644 F. Supp. 2d at 959 ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. … in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.") (emphasis in original)).[3]

---

[3] Numerous courts across the country have enforced Citibank's arbitration provisions containing similar (if not identical) language to the provision currently before the Court. *See, e.g., Ware v. Citigroup Fin. Prods., Inc.*, No. 1:13-cv-00369-CC, Dkt. No. 37 (N.D. Ga. March 5, 2014); *Samenow v. Citicorp Credit Servs., Inc.*, No. 16-1346 (CKK), 2017 WL 2303962 (D.D.C. May 25, 2017); *Bey v. Citi Health Card*, No. 15-6533, 2017 WL 2880581 (E.D. Pa. July 6, 2017);

Additionally, the Supreme Court has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph,* 531 U.S. at 91. And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

In connection with this action, it is well settled that statutory claims are subject to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) ("it is by now clear that statutory claims may be the subject of arbitration"); *Mitsubishi Motors*, 473 U.S. at 628 (by agreeing to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum."); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims."). Courts in the Eleventh Circuit routinely compel arbitration of

---

*Lenkowski v. Citibank, N.A.*, No. 8:16-cv-03472-CEH-AAS, Dkt. No. 24 (M.D. Fla. April 18, 2017); *Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. August 31, 2016); *McCormick v. Citibank*, N.A., No. 15-CV-46-JTC, 2016 WL 107911, at *6 (W.D.N.Y. Jan. 8, 2016); *Carr v. Citibank, N.A.*, No. 15-cv-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1198-99 (S.D. Cal. 2013); *Coppock v. Citigroup, Inc.,* No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); *Tractenberg v. Citigroup Inc.,* No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172 (N.D. Cal. 2012); *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); *Eaves-Leonos v. Assurant, Inc.*, 3:07-CV-18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008); *Taylor v. Citibank USA, N.A.,* 292 F. Supp. 2d 1333 (M.D. Ala. 2003); *Citibank USA v. Howard*, No. 4:02CV64LN, slip. op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); *Sesto v. Nat'l Fin. Sys., Inc.,* Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); *Barker v. Citibank (South Dakota), N.A.,* No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003). Thus, the same conclusion should be reached here.

statutory consumer protection claims, including FCCPA and FCRA claims. *See, e.g., Wickersham v. Lynch Motor Co. of Auburn, Inc.,* No. 3:11CV280-SRW, 2012 U.S. Dist. LEXIS 30203, at *11-12 (M.D. Ala. Mar. 6, 2012) (compelling arbitration claims under TILA, FCRA, and ECOA, in an action related to the plaintiff's purchase of a vehicle, because "[a]ll of the claims plaintiff asserts in her complaint arise out of the August 2010 vehicle sales transaction . . . , the parties' attempt to obtain financing . . . for plaintiff's purchase of the vehicle, and defendant's conduct in repossessing the vehicle . . . [which] fall within the scope of [plaintiff's] agreement with [defendant] to arbitrate disputes arising out of or relating to their relationship."); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224-25 (M.D. Fla. 2013) (compelling arbitration of TCPA and FCCPA claims where "[t]he alleged violations [were] tied directly to charges that are set forth in the . . . Agreement."); *Betancourt v. Green Tree Servicing, LLC*, No. 8:13-cv-2759-T-30AEP, 2013 U.S. Dist. LEXIS 176728, at *11 (M.D. Fla. Dec. 17, 2013) (compelling arbitration of an FCCPA claim); *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 U.S. Dist. LEXIS 170968, at *18-19 (M.D. Fla. Sept. 20, 2013) (granting defendant's motion to compel arbitration of plaintiff's TCPA and FCCPA claims).

Here, it is clear from the face of the Complaint that the subject claims fall within the scope of the Arbitration Agreement as the alleged claim is based on Plaintiff's allegations that Citibank violated the FCRA in connection with activities allegedly taken in relation to one of his Accounts. *See Complaint,* ¶¶ 141-169. The

Arbitration Agreement extends to all "Claims," "no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law." *See Grayot Decl.,* Exh 1. Accordingly, the Plaintiff's claim falls squarely within the broad scope of the Arbitration Agreement by its very terms.

### V.     Citibank Has Not Waived Its Right to Arbitrate.

In the final step of analysis, Citibank has not waived the right to arbitration as it is filing this Motion as its first response to the Complaint.

The Florida Supreme Court in *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005), held that wavier is the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right. The analysis for waiver is "focus[ed] on the actions of the person who held the right." *Morgan v. Sundance, Inc.* 142 S. Ct. 1708, 1713 (2022). In Florida, "[a] party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right." *Steward v. Sage Software, Inc.,* No. 6:22-CV-12-WWB-EJK, 2022 WL 4537682, at *2 (M.D. Fla. Sept. 28, 2022)(*citing Klosters Redari A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973)); *Price v. Fax Recovery Systems, Inc.,* 49 So. 3d 835, 837 (Fla. 4th DCA 2010) (finding that, where a party's first substantive filing invokes the arbitration clause, the trial court errs in finding that the party wishing to arbitrate has waived its right to do so).

13

In the instant case, Citibank has not acted in any manner inconsistent with enforcing its right to arbitration. Rather, Citibank's first substantive filing—its Answer and Affirmative Defenses—expressly invoked the arbitration clause and reserved Citibank's right to compel arbitration. Thus, Citibank has not waived its right to arbitrate Plaintiff's claims.

## VI.   The Action Must Be Stayed Pending Arbitration.

As established above, the Plaintiff's claims are clearly subject to arbitration. Once a court determines that claims are subject to arbitration, the Court must stay all proceedings pending arbitration. *See* 9 U.S.C. § 3 (providing that "the court … upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration … shall on application of one of the parties stay the trial of the action"). This provision is "mandatory" and a court lacks discretion to deny the request to stay. *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Puro Systems, Inc. v. Bevilacqua*, 2010 WL 3259966, at *1 (S.D. Fla. 2010) (observing that "[t]he Eleventh Circuit prefers that district courts stay rather than dismiss arbitrable claims."). Accordingly, this action and all pending discovery should be stayed pending the completion of arbitration.

## **CONCLUSION**

For all of the foregoing reasons, Citibank respectfully requests that the Court compel arbitration and stay this action until conclusion of the arbitration.

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), the undersigned certifies that he has conferred with Plaintiff's counsel via telephone, and Plaintiff is opposed to the relief requested herein.

Dated: February 28, 2025

*/s/ Andrew C. Wilson*
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940
Primary: louis.ursini@arlaw.com
Secondary: lisa.stallard@arlaw.com

ADAMS AND REESE LLP
100 N. Tampa Street, Suite 4000
Tampa, FL 33602
813-402-2880 (Tel.)
813-402-2887 (Fax)

Andrew C. Wilson, Esq.
Florida Bar No. 0103203
Primary: andrew.wilson@arlaw.com
Secondary: suellen.kerrigan@arlaw.com

ADAMS AND REESE LLP
2001 Siesta Dr., Suite 302
Sarasota, FL 34239
941-376-7600 (Tel.)
*Counsel for Citibank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2025, this document was electronically filed with Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

> */s/ Andrew C. Wilson*
> Andrew C. Wilson, Esq.
> Florida Bar No. 0103203